JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BASF AGRICULTRUAL SOLUTIONS US LLC

### DEFENDANTS

SHARDA USA LLC

**(b)** County of Residence of First Listed Plaintiff    Durham Couty, NC
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jonathan L. Cochran, Stapleton Segal Cochran LLC
1760 Market St., Suite 403, Philadelphia, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & | Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability ☐ 368 Asbestos Personal | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Injury Product | | ☒ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards Act | Act of 2016 | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage | Relations | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | Exchange ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | or Defendant) ☐ 871 IRS—Third Party | Act/Review or Appeal of Agency Decision |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C Section 271
Brief description of cause:
Patent Infringement of U.S. Patent No. 8,362,026

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    11/24/2025

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Norristown, Pennsylvania

---

***RELATED CASE IF ANY:*** Case Number: N/A    Judge:

1. Does this case involve property included in an earlier numbered suit?    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☒ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:

*B. Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

10/2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BASF AGRICULTURAL SOLUTIONS US LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: |
| SHARDA USA LLC | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff BASF Agricultural Solutions US LLC ("Plaintiff" or "BASF"), by its undersigned counsel, files this Complaint for Patent Infringement against Defendant Sharda USA LLC ("Defendant" or "Sharda"), and alleges as follows:

## NATURE OF THE ACTION

This is a civil action for the infringement of U.S. Patent No. 8,362,026 (the "'026 Patent" or "the Asserted Patent") under 35 U.S.C. § 271, brought by BASF Agricultural Solutions US LLC against Sharda USA LLC.

## PARTIES

1.      BASF Agricultural Solutions US LLC ("BASF") is a corporation organized and existing under the laws of the State of Delaware having an address of 2 TW Alexander Drive, Durham, North Carolina 27709. Among other things, BASF and its affiliates develop, manufacture, market, and distribute seed treatments, herbicides, fungicides, insecticides, pesticides, and other agricultural chemicals. For over a century, BASF and its affiliates' innovative agricultural solutions have helped customers throughout the world enhance their crop yield and quantity.

2.      Upon information and belief, Sharda USA LLC is a Delaware corporation with its principal place of business at 34 E, Germantown PK #227, Norristown, Pennsylvania 19401.[1] *See* Ex. 1.  Sharda USA LLC is a wholly owned subsidiary of Sharda Cropchem Limited, an Indian entity.  Ex. 2 at 75.  Sharda USA LLC markets and distributes herbicides, fungicides, insecticides, pesticides, and other agricultural chemicals in direct competition with BASF, but positioned as a lower-cost "generic" supplier of agrochemicals. Upon information and belief, Sharda USA LLC distributes, markets, imports, and sells various crop protection products, including products that infringe the Asserted Patent.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the United States Patent Act, 35 U.S.C. § 1 *et. seq*.

4.      This Court may exercise personal jurisdiction over Sharda USA LLC at least on the basis that Sharda operates at an address in this District at 34 E, Germantown PK #227, Norristown, Pennsylvania 19401. This patent infringement case arises directly from Sharda's continuous and systematic activity in this District, including at least the importation of accused products as set forth in this Complaint as directed from its place of business in Pennsylvania. In short, this Court's exercise of jurisdiction over Sharda would be consistent with the traditional notions of fair play and substantial justice.

5.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and § 1400(b). Upon information and belief, Sharda USA LLC resides in this District, has transacted

---

[1] *See also FMC Corp. v. Sharda USA LLC*, No. 24-cv-02419-MRP, Dkt. 39 (E.D. Pa. Aug. 9, 2024).

business in this District, has a regular and established place of business in this District, and has committed and/or induced acts of patent infringement in this District.

## PATENT IN SUIT

6.    On January 29, 2013, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,362,026, titled "Crystalline form of 2-chloro-5-[3,6-dihydro-3-methyl-2,6-dioxo-4-(trifluoromethyl)-1-(2H)-pyrimidinyl]-4-fluoro-N-[[methyl(1-methyl-ethyl)amino]sulfonyl]benzamide." A copy of the '026 Patent is attached as Exhibit 3.

7.    The '026 Patent is valid and enforceable.

8.    BASF is the exclusive licensee of the '026 Patent, maintaining all substantial rights in the '026 Patent, including the right to sue for infringement thereof.

## BACKGROUND

9.    BASF and its affiliates are leading agricultural companies that focus on environmental protection and social responsibility. BASF and its affiliates create and sell products and solutions that contribute to conserving resources, ensuring nutrition, and improving quality of life. To this end, BASF is one of the world's leading producers of herbicides, chemicals used for controlling and eliminating harmful plants in the growth of essential crops, such as soybeans and wheat. BASF produces herbicides that help farmers sustainably increase the yields and quality of their crops.

10.    BASF and its affiliates have a long-standing tradition in agrochemical innovation and are actively engaged in advanced research targeting compounds with possible agricultural uses. Through these efforts, BASF and its affiliates identified saflufenacil as a particularly effective herbicidal compound, which inhibits the plant enzyme Protoporphyrinogen Oxidase (PPO). Throughout the 2000s, BASF and its affiliates continued to refine the manufacturing and

formulation processes for saflufenacil to optimize its performance in agricultural applications. As part of these efforts, BASF developed a specific crystalline polymorph of saflufenacil that effectively addressed production, formulation, and application challenges. This innovation is captured in the '026 Patent and has been commercialized through BASF's portfolio of saflufenacil-containing products, including Kixor®, Treevix®, Sharpen®, Surtain®, and Zidua® PRO (collectively, the "Patented Products"), which provide farmers with efficient and sustainable solutions for weed control. The '026 Patent also encompasses the use of BASF's patented saflufenacil.

11. After development and testing, BASF characterized saflufenacil as an amorphous form—saflufenacil form I—and four different crystalline forms—saflufenacil forms II, III, IV and V. The '026 Patent claims saflufenacil form II (saflufenacil anhydrate), processes for preparing saflufenacil form II, formulations incorporating saflufenacil form II, and methods of using saflufenacil form II.

12. The properties of the different forms of saflufenacil significantly impact industrial application and performance of herbicides containing these compounds. For example, many herbicides are sold as finished, formulated, products that enable proper storage, handling, and application. Saflufenacil form II possesses several advantageous properties, including high purity, excellent flowability, and enhanced stability both as a technical active ingredient and within formulated products ready for consumer use. These characteristics facilitate its effective formulation into end products and use in commercial herbicide products. Conversely, saflufenacil forms I and V are difficult to work with, meaning they cannot be readily diluted, stored, and formulated. Saflufenacil forms I and V also have poorer overall performance and are less desirable for commercial use. Saflufenacil form II also demonstrates increased herbicidal

4

activity against weeds compared to form I, while maintaining low phytotoxicity to crops. These properties make saflufenacil form II the preferred form for commercial herbicide formulations. Saflufenacil forms III and IV are hydrates and cannot exist at concentrations higher than 97 wt% saflufenacil. Saflufenacil form II is the only known stable crystalline form of saflufenacil capable of consistently achieving a nominal concentration of 97% by weight or higher, as defined by the US Environmental Protection Agency ("EPA") standards.[2]

13.     As a result of BASF's research and investment in the development of saflufenacil form II, BASF has offered products containing saflufenacil form II that have achieved a high level of commercial success. Indeed, BASF's form II saflufenacil products have been widely adopted by commercial farmers and are known to be one of the most effective herbicides for the control of certain harmful plants in the farming industry. This commercial success has led BASF's saflufenacil form II products to be highly regarded in the industry. The EPA regulates the agricultural chemical industry. Before products can be sold they must undergo an EPA registration process to obtain registrations for both the active ingredient (referred to as the "technical", "technical active", or "technical grade active") and the specific formulations (which can take the form of granules, suspension concentrates, emulsion concentrates, etc.) that the company would like to sell in the United States. BASF has obtained technical registrations for its form II saflufenacil as well as registrations for formulated products using BASF's saflufenacil technical active.

14.     Sharda, unlike BASF, is not an innovator company. Rather, Sharda's business model is to offer generic herbicides. Sharda describes its business model as "asset-light" because

---

[2] "Nominal concentration" refers to the routinely achieved active ingredient content under good manufacturing practices and is the basis for the percentage listed in EPA registrations.

it does not manufacture any of its active ingredients or formulations. Ex. 2 at 6. Sharda advertises that a "key differentiator from innovative companies" is that it does not spend "capital, time and resources on R&D [research and development]. . .." Ex. 2 at 12. After benefiting from the research performed by other companies, Sharda enters markets with its own generic versions of products and, unencumbered by research costs, typically sells its products at reduced rates.

15.    In line with its business model, Sharda filed for and has recently obtained EPA registrations related to saflufenacil and saflufenacil-containing products, including (1) a technical registration (a registration for the active ingredient, saflufenacil), (2) registrations for consumer products in the form of a suspension concentrate ("SC") using the technical product, and (3) a registration for a consumer product in the form of a water dispersible granule ("WG") that similarly uses the technical product. *See, e.g.*, Ex. 4, Ex. 5, Ex. 6, and Ex. 7. EPA registrants are required to provide detailed technical information about their products. Each of Sharda's registrations for its saflufenacil products cite and rely on the technical data BASF submitted regarding BASF's original and patented saflufenacil EPA registration.

16.    Sharda's EPA registration documents for Sharda's saflufenacil technical registration state that the active ingredient in its saflufenacil technical product is present at a nominal concentration of 99.24% by weight. BASF's EPA registration for its technical grade saflufenacil product, branded as Kixor®, lists a nominal concentration of 97.4%. Based on the known chemistry and manufacturing processes for saflufenacil, Sharda's technical grade active ingredient is the patented form II (saflufenacil anhydrate), as this is the only known crystalline form of saflufenacil capable of achieving Sharda's reported concentration of 99.24% by weight. All other known crystalline forms of saflufenacil—hydrates (forms III and IV), and the methanol

solvate (form V)—inherently contain water or solvent in their crystal structures, which limits the maximum achievable concentration of saflufenacil to below 97%. Furthermore, the only known non-crystalline form, the amorphous form I, is unsuitable for commercial-scale manufacturing or use in SC formulations, both which require a stable crystalline form. Given these technical and regulatory constraints, the only plausible way for Sharda to achieve a technical grade active ingredient with a purity exceeding 99% is by producing or sourcing the patented form II. *See* Ex. 4 and Ex. 8.

17.     Following Sharda's registration for its technical active ingredient for saflufenacil, Sharda filed for and obtained registrations for formulations containing its technical active saflufenacil. *See* Ex. 5, Ex. 6, and Ex. 7.

18.     For example, Sharda registered a SC product ("Feature") and a SC product II ("Race" / "Nishan")[3] that contains saflufenacil as an active ingredient at 29.74% on a weight percentage basis. *See* Ex. 5 and Ex. 6. This weight percent is the exact same weight percent as BASF's saflufenacil Sharpen® SC product, which is formulated using BASF's technical grade saflufenacil. *See* Ex. 9.

19.     Sharda also registered for a WG product ("Mystree") that contains saflufenacil as an active ingredient at 70% on a weight percentage basis. *See* Ex. 7 and Ex. 13. This is the same concentration and formulation type as BASF's Treevix® herbicide, which also contains 70% saflufenacil in a WG formulation. *See* Ex. 10.

---

[3] Sharda refers to its SC products with alternative brand names ("ABN"), see for example Ex. 11. Feature is a SC. *See* Ex. 12 (describing Feature as "Sharda Saflufenacil 29.74% SC" and referencing EPA Reg. No. 83529-264 [*see* Ex. 5]). Sharda also refers to its SC products as "Nishan" (Ex. 6) and "Nisham" (Ex. 11).

20.     Sharda's formulated saflufenacil products—including both its WG product and SC product—must be formulated from Sharda's technical grade saflufenacil product. This is the only technical active ingredient that the EPA has authorized Sharda to manufacture, use, or sell in the United States. *See* 40 C.F.R. §§ 158.300 and 158.350 (stating that a registrant is required to use the registered technical grade active ingredient as the source for its formulated products, and that the certified limits of the active ingredient must match the registered technical grade active ingredient).

21.     BASF is the only other entity with an EPA-registered technical grade saflufenacil product, and BASF has not granted Sharda any license, authorization, or access to use its patented form II anhydrate. Sharda has no authorization to use BASF's registered technical grade saflufenacil and cannot claim a formulators' exemption under 40 C.F.R. § 152.85, as it has not purchased or been granted access to BASF's product.

22.     In May 2025, following receipt of EPA registrations for its technical active saflufenacil product and formulated products, Sharda began importing commercial quantities of certain infringing products containing saflufenacil (the "Accused Products") into the United States, including products under the trade names "Feature," (aka "Race" or "Nishan") and/or "Mystree," into the United States. Ex. 14.

23.     Following importation, Sharda began to selectively register its infringing products in various states, which is required before Sharda can begin to sell and distribute its products into each specific state. Such state-level registration is a mandatory legal prerequisite for the sale of herbicide products within each respective state. Without obtaining these registrations, Sharda would be prohibited from offering its products for sale in those jurisdictions. Initiating these registrations is a final step in the commercialization of Sharda products.

24.    As an example, Sharda's Race product, an Accused Product, is registered in a number of states, and is in the process of being registered in many others. See excerpt from shardausa.com/product/race-herbicide:



25.    Similarly, Sharda's Mystree product, another Accused Product, is also in the process of being registered in a number of states. See excerpt from https://www.shardausa.com/product/mystree:



26.     Additionally, as seen above, in promoting Race Sharda specifically references BASF's saflufenacil containing product, "Sharpen®" as the "Cited Brand Name", indicating that Sharda equates its Race herbicide with BASF's patented Sharpen® herbicide and intends to sell and sells Race as a competing product.

27.     Upon information and belief, Sharda is and was aware that BASF's saflufenacil technical active product and formulations using the same are patented.

28.     Upon information and belief, Sharda is and was aware that BASF's saflufenacil herbicide formulations and methods of treatment are patented.

29.     Upon information and belief, Sharda is and was aware that BASF's saflufenacil SC product and methods of treatment using the same are patented.

30.     Upon information and belief, Sharda is and was aware that BASF's saflufenacil WG product and methods of treatment using the same are patented.

31.     In violation of BASF's patent rights, Sharda has imported quantities of the Accused Products into the United States, starting in May 2025.

32.     On or about May 12, 2025, Sharda imported 22,705 kg of the Feature product (the SC) into the United States. *See* Ex. 14.

33.     On or about May 12, 2025, Sharda imported 6,228 kg of the Mystree product (the WG) into the United States. *See* Ex. 14.

34.     These Accused Products were shipped from Sharda Cropchem Limited at Room No. 2704, NO.135 Yanling West Road, Changzhou, China to Sharda USA LLC at 17 Cotters Lane, East Brunswick, New Jersey, 08816. *See* Ex. 14.

35.     Along with importing the Accused Products into the United States, Sharda either has sold, offered for sale, or intends to sell or offer for sale, the Accused Products in the United States.

36.     Sharda lists Race on the "herbicides" section of its website, located at shardausa.com/product/race-herbicide: (the "Race webpage listing"). The Race webpage listing includes links to download the Product Label for Race and the Race Safety Data Sheet. A printout of the Race webpage listing is attached hereto as Exhibit 15.

37.     Sharda lists Feature on the "herbicides" section of its website, located at shardausa.com/product/feature (the "Feature webpage listing"). The Feature webpage listing includes links to download the Product Label for Feature and the Feature Safety Data Sheet. A printout of the Feature webpage listing is attached hereto as Exhibit 16.

38.     Sharda lists Mystree on the "herbicides" section of its website, located at shardausa.com/product/mystree: (the "Mystree webpage listing"). The Mystree webpage listing includes links to download the Product Label for Mystree and the Mystree Safety Data Sheet. A printout of the Mystree webpage listing is attached hereto as Exhibit 17.

39.     At least as early as about November of 2025, Sharda has sold its Race herbicide in the United States.

40.     For example, at least as early as about November of 2025, third party resellers, such as the Farmer's Business Network, offer and continue to offer for sale Sharda's Race herbicide for delivery in the United States. Ex. 18.

41.     On information and belief, Sharda actively, knowingly, and intentionally induces its customers to use the Accused Products in an infringing manner by, for example, selling, supplying, and otherwise providing instruction and guidance regarding the Accused Products

with the knowledge and specific intent to encourage and facilitate infringing uses of such products by its customers and end-users, both inside and outside the United States.

42.     For example, Sharda publicly provides safety data sheets which instruct users on approved uses of the Accused Products, including information available through Sharda's publicly accessible website, instructing customers on uses of Sharda products that infringe the '026 Patent. *See* Ex. 11 [4]; Ex. 12 [5]; Ex. 13 [6].

43.     As another example, the product label for Race specifically explains that Race is to be used for "field and row crops (alfalfa, chickpea (garbanzo beans), corn (field, seed, silage, sweet, and popcorn), cotton, edible bean, edible pea, field pea, forage grasses (cool-season and warm-season), grass grown for seed, lentils, rice, small grains, sorghum, southern pea, soybean, vegetable soybean (edamame)), fallow and postharvest croplands, pasture and rangeland, and in noncropland areas."  *See* Ex. 19[7] at 4; *see also* Ex. 20 ("Feature Label") and Ex. 21 ("Mystree Label").  The product label further includes instructions such as "User Safety Recommendations," "Directions For Use," and "Application Instructions" as shown below:



**USER SAFETY RECOMMENDATIONS**
- Users should wash hands before eating, drinking, chewing gum, using tobacco, or using the toilet.
- Users should remove clothing/PPE immediately if pesticide gets inside. Then wash thoroughly and put on clean clothing.
- Users should remove PPE immediately after handling this product. Wash the outside of gloves before removing. As soon as possible, wash thoroughly and change into clean clothing.

## DIRECTIONS FOR USE

It is a violation of Federal law to use this product in a manner inconsistent with its labeling. Read the entire label before using this product. This label must be in the possession of the user at time of herbicide application.

**DO NOT** apply this product in a way that will contact workers or other persons, either directly or through drift. Only protected handlers may be in the area during application. For any requirements specific to your State or Tribe, consult the State or Tribal agency responsible for pesticide regulation.

---

[4] https://www.shardausa.com/product/race-herbicide (last visited November 21, 2025).

[5] https://www.shardausa.com/product/feature (last visited November 21, 2025).

[6] https://www.shardausa.com/product/mystree (last visited November 21, 2025).

[7] https://www.shardausa.com/product/file/497/label (last visited November 21, 2025).

**APPLICATION INSTRUCTIONS**

**Race Herbicide** may only be applied before crop emergence, except for harvest aid/desiccation uses and post-emergence in alfalfa, forage grasses, grass grown for seed, and rice.

**DO NOT** apply more than 2.0 fl. oz./A of **Race Herbicide** in a single application in California.

**Application Rates**

Application rates of **Race Herbicide** may vary depending on organic matter and soil texture. Refer to **Table 3** for soil texture groups used in this label.

Excerpts from Ex. 19 at 3, 10.

44.     By providing such instruction and marketing to its customers, Sharda induces infringement.

45.     Upon information and belief, Sharda intends to offer the generic Accused Products at a significantly lower price point than Sharda's Patented Products, which, absent relief from this Court, will lead to irreparable price erosion for BASF's Patented Products as well as loss of BASF's market share and damage to BASF's goodwill and long-term competitive position.

46.     The herbicides offered by BASF and Sharda, and covered by the Asserted Patent, are seasonal products that are primarily purchased by distributors at a certain time of the year, and then purchased by farmers during a later time of the year. The bulk of sales of saflufenacil and products containing saflufenacil to distributors takes place in the late fall and winter prior to relevant growing season. The bulk of sales of the saflufenacil and products containing saflufenacil to farmers takes place in the spring of the relevant growing season. Thus, sales and purchases of the Accused Products for 2026 are currently being made. *See, e.g.*, Exhibit 18.

## COUNT I
### *Sharda's Direct Infringement of the '026 Patent under 35 U.S.C. § 271*

47.     BASF incorporates Paragraphs 1- 46 by reference as if fully incorporated here.

48. Upon information and belief, Sharda has infringed and continues to infringe within the meaning of 35 U.S.C. § 271(a) by, without BASF's authority, importing, making, using, selling, and/or offering to sell in the United States products covered by the '026 Patent.

49. According to Sharda's own advertisements, product label, and EPA registrations, Sharda has directly infringed at least claims 1, 4, 10, 11, and 13 of the '026 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271 by importing, using, offering for sale, and/or selling an herbicidal composition comprising saflufenacil form II made and used in accordance with BASF's patented composition and method, without authorization from BASF.

50. According to Sharda's product label, Race, an exemplary Accused Product, comprises the following formula:



Ex. 19.

51. Claim 1 of the '026 Patent claims as follows:

1. A crystalline, essentially solvent-free form II of 2-chloro-5-[3,6-dihydro-3-methyl-2,6-dioxo-4-(trifluoromethyl)-1-(2H)pyrimidinyl]-4-fluoro-N-[[methyl(1-methylethyl)amino]sulfonyl]benzamide, which in an X-ray powder diffractogram at 25° C. and Cu—$K_\alpha$ radiation, shows at least six of the following reflexes, given as 2θ values: 6.3±0.3°, 9.4±0.3°, 10.9±0.3°, 11.9±0.3°, 12.6+0.3°, 15.0±0.3°, 15.8±0.3°, 17.1±0.3°, 20.0±0.3°, 20.4±0.3°, 24.7±0.3°, 25.2±0.3°, 26.2±0.3°.

52. Claim 1 of the '026 Patent requires a crystalline, essentially solvent-free, composition comprising form II of 2-chloro-5-[3,6-dihydro-3-methyl-2,6-dioxo-4-(trifluoromethyl)-1-(2H)pyrimidinyl]-4-fluoro-N-[[methyl(1-methylethyl)amino]sulfonyl]benzamide, which is saflufenacil form II.

53. Sharda's Race product label lists saflufenacil as an active ingredient.

54. Sharda's Race product label identifies the active ingredient as N'-[2-chloro-4-fluoro-5-(3-methyl-2,6-dioxo-4-(trifluoromethyl)-3, 6-dihydro-1(2H)-pyrimidinyl)benzoyl]-N-isopropyl-N-methylsulfamide.

55. N'-[2-chloro-4-fluoro-5-(3-methyl-2,6-dioxo-4-(trifluoromethyl)-3, 6-dihydro-1(2H)-pyrimidinyl)benzoyl]-N-isopropyl-N-methylsulfamide is an alternative chemical name for 2-chloro-5-[3,6-dihydro-3-methyl-2,6-dioxo-4-(trifluoromethyl)-1-(2H)pyrimidinyl]-4-fluoro-N-[[methyl(1-methylethyl)amino]sulfonyl]benzamide. Both chemical names refer to saflufenacil and refer to the same chemical compound. *See* Ex. 22.

56. Sharda's technical registration for saflufenacil identifies a technical active ingredient at a nominal concentration of 99.24% by weight. Ex. 4.

57.    According to EPA regulations, Sharda's Race product must be made using Sharda's registered technical active ingredient.

58.    The saflufenacil in Sharda's formulated Race product is in crystalline form.

59.    Given its 99.24% concentration, the crystalline saflufenacil in Sharda's formulated Race product is an essentially solvent-free anhydrous form.

60.    Form II crystalline saflufenacil will necessarily contain the reflexes listed in Claim 1 as they are inherent properties of and diagnostic for crystalline saflufenacil form II.

61.    Based on the foregoing, Sharda's Race product includes all the limitations of Claim 1 of the '026 Patent.

62.    Similarly, Sharda's other Accused Products satisfy all the limitations of at least Claim 1 of the '026 Patent. *See* Ex. 22.

63.    The Accused Products containing saflufenacil form II directly infringe at least one claim of the '026 Patent, pursuant to 35 U.S.C. § 271(a).

64.    BASF has been and will continue to be irreparably harmed by Sharda's infringement of the '026 Patent.

65.    Sharda's infringement of the '026 Patent has caused and is continuing to cause BASF to suffer irreparable harm, which harm is not fully compensable by monetary damages, and BASF is entitled to injunctive relief to prevent further infliction of such harm.

66.    BASF has suffered monetary damages as a result of the direct and indirect infringing activities of Sharda and will continue to suffer damages as long as those infringing activities continue.

67.    BASF is entitled to recover damages adequate to compensate BASF for Sharda's infringement of the '026 Patent.

68.    By virtue of at least the filing of this Complaint, Sharda has actual notice of the '026 Patent and the grounds for infringement, such that any future infringing acts will be willful.

## COUNT II
### Sharda's Indirect Infringement of the '026 Patent under 35 U.S.C. § 271

69.    BASF incorporates Paragraphs 1 - 68 by reference as if fully incorporated here.

70.    Upon information and belief, Sharda has infringed and continues to infringe within the meaning of 35 U.S.C. § 271(b) by inducing others to infringe the Asserted Patent.

71.    According to Sharda's own advertisements, product label, and EPA registrations, Sharda induces others to infringe at least claim 13 of the '026 Patent in violation of 35 U.S.C. § 271(b) by encouraging and instructing end users to perform the patented method of controlling undesired vegetation using saflufenacil form II. Sharda performs these affirmative acts with knowledge of the Asserted Patent and with the intent, or willful blindness, that the induced acts directly infringe the Asserted Patent.

72.    For example, Sharda's product label for Race, an exemplary Accused Product, includes the following directions for use and use requirements:

## ENGINEERING CONTROLS STATEMENT

When handlers use closed systems, or enclosed cabs in a manner that meets the requirements listed in the Worker Protection Standard (WPS) for agricultural pesticides [40 CFR 170.607 (d-e)], the handler PPE requirements may be reduced or modified as specified in the WPS.

**IMPORTANT:** When reduced PPE is worn because a closed system is being used, handlers must be provided all PPE specified above for applicators and other handlers and have such PPE immediately available for use in an emergency, including a spill or equipment breakdown.

---

### USER SAFETY RECOMMENDATIONS

- Users should wash hands before eating, drinking, chewing gum, using tobacco, or using the toilet.
- Users should remove clothing/PPE immediately if pesticide gets inside. Then wash thoroughly and put on clean clothing.
- Users should remove PPE immediately after handling this product. Wash the outside of gloves before removing. As soon as possible, wash thoroughly and change into clean clothing.

---

### ENVIRONMENTAL HAZARDS

For terrestrial uses, **DO NOT** apply directly to water, areas where surface water is present, or intertidal areas below the mean high-water mark. **DO NOT** contaminate water when disposing of equipment washwater or rinsate.

**Groundwater Advisory**

Saflufenacil has properties and characteristics associated with chemicals detected in groundwater. This chemical may leach into groundwater if used in areas where soils are permeable, particularly where the water table is shallow.

**Surface Water Advisory**

This product may impact surface water due to runoff of rainwater. This is especially true for poorly draining soils and soils with shallow groundwater. This product is classified as having high potential for reaching surface water via runoff for several weeks after application. A level, well-maintained buffer strip between areas to which this product is applied and surface water features including ponds, streams, and springs will reduce the potential loading of this chemical from runoff water and sediment. Runoff of this product will be reduced by avoiding application when rainfall is forecast to occur within 48 hours.

**Endangered Species Protection Requirements**

This product may have effects on federally listed threatened or endangered plant species or their critical habitat. When using this product, you must follow the measures contained in the Endangered Species Protection Bulletin for the county or parish in which you are applying the pesticide. To determine whether your county or parish has a Bulletin, and to obtain that Bulletin, consult http://www.epa.gov/espp/ or call 1-844-447-3813 no more than 6 months before using this product. Applicators must use Bulletins that are in effect in the month in which the pesticide will be applied. New Bulletins will be available from the above sources 6 months prior to their effective dates.

# DIRECTIONS FOR USE

It is a violation of Federal law to use this product in a manner inconsistent with its labeling. Read the entire label before using this product. This label must be in the possession of the user at time of herbicide application.

**DO NOT** apply this product in a way that will contact workers or other persons, either directly or through drift. Only protected handlers may be in the area during application. For any requirements specific to your State or Tribe, consult the State or Tribal agency responsible for pesticide regulation.

3

---

**AGRICULTURAL USE REQUIREMENTS**

Use this product only in accordance with its labeling and with the Worker Protection Standard, 40 CFR Part 170. This Standard contains requirements for the protection of agricultural workers on farms, forests, nurseries, and greenhouses, and handlers of agricultural pesticides. It contains requirements for training, decontamination, notification, and emergency assistance. It also contains specific instructions and exceptions pertaining to the statements on this label about personal protective equipment (PPE), notification to workers, and restricted-entry interval. The requirements in this box only apply to uses of this product that are covered by the Worker Protection Standard.

**DO NOT enter or allow worker entry into treated areas during the restricted-entry interval (REI) of 12 hours following application.**

**Exception:** If the product is soil injected or soil incorporated, the Worker Protection Standard, under certain circumstances, allows workers to enter the treated area if there will be no contact with anything that has been treated.

PPE required for early entry to treated areas (that is permitted under the Worker Protection Standard and that involves contact with anything that has been treated, such as plants, soil, or water), is:

- Coveralls,
- Waterproof gloves,
- Shoes plus socks, and
- Protective eyewear including face shield, goggles, or safety glasses.

---

**NONAGRICULTURAL USE REQUIREMENTS**

The requirements in this box apply to uses of this product that are NOT within the scope of the Worker Protection Standard for agricultural pesticides (40 CFR Part 170). The WPS applies when this product is used to produce agricultural plants on farms, forests, nurseries, or greenhouses.

**DO NOT enter or allow worker entry into treated areas without protective clothing until sprays have dried.**

---

**PRODUCT INFORMATION**

**Race Herbicide** provides both contact burndown and rate-dependent residual preemergence broadleaf weed control (refer to **Table 1** and **Table 2** for lists, respectively). It can be used in select field and row crops (alfalfa, chickpea (garbanzo beans), corn (field, seed, silage, sweet, and popcorn), cotton, edible bean, edible pea, field pea, forage grasses (cool-season and warm-season), grass grown for seed, lentils, rice, small grains, sorghum, southern pea, soybean, vegetable soybean (edamame), fallow and post-harvest croplands, pasture and rangeland, and in noncropland areas. **Race Herbicide** must be used sequentially or tank mixed with a grass herbicide for a complete weed control program because it does not control grass weeds. Refer to **CROP-SPECIFIC USE DIRECTIONS** section for recommendations on herbicide tank mixtures or sequential programs.

For burndown applications, use **Race Herbicide** when broadleaf weeds are small and actively growing. For optimum burndown activity, an adjuvant is required with **Race Herbicide** (refer to **ADDITIVES** section for details). Burndown activity may be reduced or slowed under cloudy and/or foggy or cooler weather conditions, or when weeds are growing in drought or other stress conditions. Use a higher application rate within an application rate range and/or higher spray volumes when targeting dense weed populations and/or larger broadleaf weeds. Angling nozzles forward (to 45 degrees) may improve penetration of denser weed canopies.

Residual preemergence applications of **Race Herbicide** must be activated by at least 1/2 inch of rainfall or sprinkler irrigation before weed seedling emergence. A labeled postemergence herbicide or cultivation may be needed to control weed escapes when **Race Herbicide** is not activated.

4

Race Herbicide 1G Book US 83529-265 12838CR2.indd   4                                                    5/15/25   7:59 AM

Excerpts from Ex. 19.

73.     Claim 13 of the '026 Patent claims as follows:

13. A method of controlling undesired vegetation, wherein the crystalline form II according to claim 1 is allowed to act on plants, their environment and/or on seeds.

74.     As described above, Sharda's formulated Race product contains saflufenacil in a crystalline, essentially solvent free, form according to claim 1.

75.    Sharda's Race product label instructs users to utilize the product on certain "field and row crops." Ex. 19.

76.    Sharda's Race product label also instructs users, for example, to "use Race Herbicide when broadleaf weeds are small and actively growing." Ex. 19.

77.    Thus, Sharda's Race product label instructs users on methods of controlling undesired vegetation by applying its infringing products to act on plants, their environment and/or on seeds.

78.    On information and belief, Sharda is aware that BASF's saflufenacil herbicide formulation and methods of treatment are patented.

79.    On information and belief, Sharda is aware that instructing its customers to use the Accused Products will cause its customers to directly infringe the '026 Patent.

80.    Thus, by importing, selling, and offering for sale the Accused Products in the United States to consumers and end users and by instructing those consumers and end users to use those Accused Products, Sharda specifically intends and directs that others use the Accused Product in an infringing manner, thereby inducing infringement of the '026 Patent pursuant to 35 U.S.C. § 271(b).

81.    BASF has been and will continue to be irreparably harmed by Sharda's infringement of the '026 Patent.

82.    Sharda's infringement of the '026 Patent has caused and is continuing to cause BASF to suffer irreparable harm, which harm is not fully compensable by monetary damages, and BASF is entitled to injunctive relief to prevent further infliction of such harm.

83.    BASF has suffered monetary damages as a result of the direct and indirect infringing activities of Sharda and will continue to suffer damages as long as those infringing activities continue.

84.    BASF is entitled to recover damages adequate to compensate BASF for Sharda's infringement of the '026 Patent.

85.    By virtue of at least the filing of this Complaint, Sharda has actual notice of the '026 Patent and the grounds for infringement, such that any future infringing acts will be willful.

## REQUEST FOR RELIEF

WHEREFORE, BASF respectfully requests the following relief:

1.    A judgment that Defendant Sharda USA LLC ("Sharda") has directly infringed one or more claims of the Asserted Patent, and/or that Defendant Sharda has indirectly infringed one or more claims of the Asserted Patent by way of inducing direct infringement by its customers;

2.    Entry of a preliminary and a permanent injunction restraining and enjoining Defendant Sharda, its officers, agents, employees, and those persons in privity with them and those acting in active concert or participation with Defendant Sharda, from any further direct or indirect infringement of the Asserted Patent for the full terms thereof, including any extensions, pursuant to 35 U.S.C. § 283;

3.    An Order instructing Defendant Sharda to destroy:

    i.   Any and all remaining Accused Products; and

    ii.  Any and all products created or derived from the Accused Products;

4.    An Order instructing Defendant Sharda to file with this Court a report in writing and under oath setting forth in detail the manner and form in which Defendant Sharda has

complied with any permanent injunction or Order resulting from this case within thirty (30) days after entry of such permanent injunction or Order;

5.     A judgment that BASF be awarded all appropriate damages under 35 U.S.C. § 284 for Defendant Sharda's past infringement and any continuing or future infringement of the Asserted Patents, up until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements pursuant to 35 U.S.C. § 284;

6.     A finding that Defendant Sharda's infringing acts after receiving notice of this Complaint and the exhibits thereto are willful, and an accompanying award of treble damages pursuant to 35 U.S.C. § 284;

7.     A finding that this action is an exceptional case under 35 U.S.C. § 285 such that BASF be awarded costs and expenses, including reasonable attorneys' fees, that BASF incurs in prosecuting this action; and

8.     A judgment or award of such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

BASF demands a jury trial on all claims and issues so triable.


Dated: November 24, 2025                    Respectfully submitted,

                                            STAPLETON SEGAL COCHRAN LLC

                                            By: *s/ Jonathan L. Cochran*
                                            Jonathan L. Cochran (PA ID 314382)
                                            Michael D. Weingartner (PA ID 334465)
                                            1760 Market Street, Suite 403
                                            Philadelphia, PA 19103
                                            215.261.5210
                                            jcochran@stapletonsegal.com
                                            mweingartner@stapletonsegal.com

Of counsel

KILPATRICK STOCKTON & TOWNSEND LLP

Matias Ferrario (pro hac vice to be filed)
Lawson Allen (pro hac vice to be filed)
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Email: mferrario@ktslaw.com
Email: lallen@ktslaw.com

Kevin M. Bell (pro hac vice to be filed)
1400 Wewatta Street, Suite 600
Denver, CO  80202
Telephone:  (303) 571-4000
Email: kbell@ktslaw.com

Sarah Y. Kamran (pro hac vice to be filed)
1801 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 248-3830
Email: skamran@ktslaw.com

Karina Glushchak (pro hac vice to be filed)
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Email: kglushchak@ktslaw.com